JUDGE PRYOR
delivered the opinion op the court.
The Bowling Green & Madisonville Railroad Company was incorporated by an act of the legislature, approved the 22d day of March, 1871, with all the rights, privileges, and franchises belonging to the Cincinnati, Glasgow & Bowling Green Railroad Company, incorporated on the 21st of March, 1870, the charter of the one being adopted by the act as the charter of the other “ as far as the same is applicable,” etc. The sixteenth section of this act incorporating the Cincinnati, Glasgow & Bowling Green Railroad Company provides “that whenever the said railway company shall request the county court of any county through or adjacent to which it is proposed to construct said railway to subscribe, either absolutely or upon specified conditions, a specified amount to the capital stock of said company, the county court so requested may, in their discretion, order an election, to be held at the several voting-places in said county on a day to be fixed by the court, not later than thirty days after the making of such order, and shall appoint judges and other officers necessary to hold said election.”
The president and directors of the appellant (the Bowling Green & Madisonville Railroad Company) adopted a resolution in April, 1872, requesting the County Court of Warren to submit to the qualified voters of that county the question whether the said county court shall subscribe for and on behalf of said county of Warren five.thousand shares, or five hundred thousand dollars, to the capital stock of the company, etc. This resolution was presented to the county court of the county, the county judge alone presiding, and at a called term held on the 16th of April, 1872, the court ordered a poll to be opened .at the various voting-places in the county, in order that the qualified voters might vote for or against the subscription. The vote was taken, as prescribed by the order, on the 15th of May, 1872, and the *715 result was seventeen hundred and ninety-nine votes for the subscription, and thirteen hundred and twenty-four against it. An order was then entered, directing the clerk of the court to subscribe five hundred thousand dollars to the capital stock of appellant, and the subscription was made as ordered.
Application was then made by the company to the county court for the bonds of the county, but the county judge refused to issue or deliver the bonds; and upon that refusal application was again made to the county judge and the justices of the county associated with him, and they still refused to comply with the demand.
The subscription was to be paid, by the terms of the charter, in coupon-bonds of the county running twenty years, payable to bearer in the city of New York, bearing eight per cent interest, payable semi-annually. The appellant then filed a .petition in the Warren Circuit Court against the Warren County Court and H. K. Thomas, presiding judge, asking a mandamus requiring and commanding the county court to issue the bonds in accordance with the subscription. The county judge responded to the petition, and upon the hearing the court below denied the motion for a mandamus and dismissed the petition, from which this appeal is prosecuted.
The appellee in the court below presented numerous grounds of defense, only one of which will be considered by the court in determining the rights of these pai'ties. This ground of defense is that the county court held by the county judge alone had no authority to submit the question of subscription to a vote of the people, but that it should have been done by a court composed of a majority of the justices associated with the county judge.
In order to ascertain the true intent and meaning of the legislature in enlarging the power of the County Court of Warren by that portion of appellant’s charter contained in the sixteenth section already quoted, it becomes necessary to *716 look to the provisions of the state constitution as well as the statutory enactments, under which the county courts of the state are organized and their jurisdiction conferred.
By the 29th section of article 4 of the state constitution it is provided that "a county court shall be established in each county now existing or which may hereafter be erected within this commonwealth, to consist of a presiding judge and' two associate judges, any two of whom shall constitute a court for the transaction of business; Provided, the General Assembly may at any time abolish the office of the associate judges whenever it shall be deemed expedient; in which event they may associate with said court any or all of the justices of the peace for the transaction of business.”
Section 34 of the constitution requires each county to be laid off into districts, and that two justices of the peace shall be elected from each district* by the qualified voters, and to hold their office for the term of four years.
Section 37 of the constitution provides "that the General Assembly may provide by law that the justices of the peace in each county shall sit at the court of claims, and assist in laying the county levy and making appropriations only.”
Section 33 provides that "the jurisdiction of the county court shall be regulated by law, and until changed shall be the same now vested in the county courts of this state.”
The office of associate judge was abolished by article 21 of chapter 27 of the Revised Statutes, and by section 2 of the same article it 'is enacted that a county court shall be held in each county at the seat of justice by the presiding judge; but at the court of claims the justices of . the peace of the county shall sit with the presiding judge and constitute the court. It is also provided in section 4 of the same article as follows: “But justices of the peace shall only compose a part of the court when it is engaged in laying the county levy and in appropriating money, and in transacting other financial *717 business of the county.” It is further provided by section 8 of the same article that “ the records of the county court shall at all times show by whom the court is holden. When justices of the peace compose a part of the court the records must state the names of such who take their seats, and when a member leaves the bench his absence must be noted. It was also provided by the Revised Satutes in force when this submission to a vote of the people was made under appellant’s charter, that in the absence of the county judge the justice residing nearest the court-house should hold the court, and for that purpose was vested with all the powers of the county judge.
It is manifest, after a careful reading of these various constitutional and statutory enactments, that the county court of a county is to be held alone by the county judge for the purpose of transacting all the ordinary business of the county pertaining to such a court. The probate of wills, granting letters of administration, appointing guardians—in fact, all the jurisdiction given by the general laws of the state to the county court, with scarcely an exception^—is exercised by the county judge as such, and can not, or could not at the time this controversy originated, have been exercised by any other official, except by the justice of the peace residing nearest ■the court-house, in the absence of the county judge. Therefore, as a general rule, when reference is made to a county court or the action of a county court it is understood as a court presided over by the county judge alone. Justices of the peace are associated with him in laying the county levy, making appropriations, and when the financial interest of the county is involved. When these appropriations are being made it is sometimes called the court of claims, or the court of levy and disbursements; but it is often designated- by the language used in the general laws, special statutes, and by those attending its sessions as the county court; as, for instance, it is provided by section" 8 of the Revised Statutes *718 “that the records of the county court shall at all times show by whom the court is- holden. When justices of the peace compose a part of the court the records must state the names of such who talce their seats,” etc. So a court held for the purpose of ascertaining the levy'or to make an appropriation (the justices presiding with the county judge) is as much a county court as a court held by the county judge in transacting the ordinary business of the county. ,
A county court held by the county judge, or by the judge in conjunction with the justices, has no power to impose such taxation as this on the people of the county or to submit the question of taxation to the popular vote without some special legislative enactment; and in the absence of any such original jurisdiction belonging to either mode of organization it remains to be determined whether the legislative intent to be gathered from the provisions of appellant’s charter, and particularly the sixteenth section, was to empower the county judge alone to exercise this right, or to require that the justices of the county should be associated with him. If the direction of the legislature had been imperative on the county court to enter the order submitting the question of subscription to the people, there would be little difficulty in determining this question; for if the county court had been deprived of all discretion and compelled to obey a mandatory act, it would be immaterial Avhether the county court, composed of the justices or the county judge, made the order, as either or both must obey.
In this case the legislature seems to have departed from the usual course of legislation with reference'to such charters, and instead of exercising its OAvn judgment as to the interests of the people in this particular locality, or of permitting them primarily to do so, required that the county court, preliminary to a vote on the question by the people, should first, in its discretion, determine the propriety of such legislative action. This action on the part of the county court was certainly not *719 judicial. The appellant had no right or claim on the people to make the subscription, or upon the county court to order the vote. The company was empowered by the act to make a request only of the county court that it might in its discretion’ accede to or refuse. No notice was required to be given any one that such a request would be made. No parties were to be made to the proceeding or judgment rendered; hence all the incidents pertaining to a judicial proceeding are absent from this formal action on the part of the company in making the request of the county court. The legislature had refused or failed to submit the question directly to a vote of the people, but had by the sixteenth section of the charter of appellant delegated this legislative right to the county court, and invested that tribunal with the right to determine, in its discretion, whether the interests of the county required that this vote should be taken. This power when exercised by the county court was more in the nature of legislative than judicial or ministerial action. The county, by the vote of its people in favor of the tax, was creating a debt amounting to half a million of dollars, with interest at the rate of eight per cent, payable semi-annually. It was a matter of vital importance to the people of the county of Warren, as well as the other counties to whom such a proposition might have been made by appellant, that they should fully understand the nature of the burden they were about assuming, and the legislature in its wisdom saw proper to give them the benefit of the judgment of those who represented the various localities and interests in each county, in order that they might determine whether the benefits to be derived from the construction of this railway would be an equivalent for the large expenditure to be made. It was certainly not intended to enlarge the fiscal power of the county court over which the county judge alone presided. The court, when thus held, had never been invested by the general laws of the state with *720 such jurisdiction; but, on the contrary, the fiscal power of the court, including all the appropriations made where the amount exceeded fifty dollars, is vested in the court when held by the county judge in connection with the justices.
The sixteenth section of appellant’s charter was no doubt framed with the view of giving to the court when composed of the presiding judge and justices the discretion to grant or refuse the request of the company in regard to the submission of the question to a vote of the people. . The clause contained in that section reads, “ The county court so requested may, in their discretion, order an election,” etc. The bad English contained in the sentence, by the use of the plural pronoun “their” when referring to the county court, does not destroy the meaning intended to be conveyed by it. Mala grammatica non vitiat ohartam. The use of the plural pronoun in the sentence suggests a court composed of a plurality of persons or judges, and that the exercise of the power conferred was confined to a county court held by the presiding judge and the justices. If, as contended by the appellant, the letter “s” should be added to the word “court,” the sentence would then read “that the county courts may, in their discretion, order an election to be held at the several voting-places in the county,” making the grammar of the sentence as imperfect with the letter “s” as it is when omitted. Nor will the court, in order to arrive at a construction more favorable to the company than the county, add either a word or letter to the sentence for that puipose, when the meaning can be ascertained not only from the language used, but where the intent is manifest from other provisions of the charter.
After vesting the county court with the discretionary power by the 16th section, the charter, by the provisions of the 18th section, defines the duties of the county judge as follows: “On the next day after the poll-books are returned the county judge and county clerk shall count the vote, and if it shall appear *721 that the majority of those voting voted in favor of the subscription, the county judge shall order the vote to be entered on the record and the subscription to be made by the clerk in behalf of the county ,” showing that the legislature in enacting the various sections of the charter kept in view the distinction between the powers to be exercised by the county court and the duties assigned the county judge. After the county court had ordered the vote it was made the imperative duty of the county judge (that could be discharged only in open court) to have the vote entered of record. The distinction is also recognized by the 22d section, the charter again requiring the county court to cause to be levied and collected a tax to pay the interest on the bonds. The exercise of this legislative discretion by the county court was a condition precedent to the submission of the question to a vote of the people. It was enacted for the security of the tax-payer and the protection of the citizen. The justices assembling together from all parts of the county, and constituting with the county judge the county court, were presumed to know the interests and wants of the people; the necessity for the construction of such a railway; the financial condition of the citizens and the county; and hence the propriety of vesting this discretionary power with such representative men, the exercise of which was and is indispensable to the validity of a vote by the people assuming this burden of taxation. In the case' of Clark v. Crane (5 Mich.) it is said “that what the law requires to be done for the protection of the tax-payer is mandatory, and can not be regarded as directory merely.”
In the case of the Mercer County Court against the Kentucky River Navigation Co. (8 Bush, 300) this court said, “By the act under consideration the authority conferred on the justices composing the various county courts was purely personal. The General Assembly doubtless assumed that they, as the general financial agents of the tax-payers of the different *722 counties, were proper persons to determine the important questions submitted to their action.” (Taney v. Milberry, 21 Pick,; State v. Lean, 9 Wis.; People v. Schermerhorn, 19 Barbour; Cooley’s Constitutional Limitations, 75.)
The case of the Louisville & Nashville Railroad Company against the County Court of Davidson (1 Sneed, Tennessee, 659) relied on by counsel for appellant, is not analogous to the case under consideration. The charter of the Louisville & Nashville Railroad Company made it “the duty of the county court to order the election upon the application in writing of a majority of the commissioners of the road, or if organized by the board.” In that case one of the principal grounds for maintaining the action .of the county court in making the subscription was “that the court had no discretionary quasi-legislative or judicial power given to it in any part of the act;” and again, “No discretion is any where given; that seems to be studiously avoided by the legislature. The intention evidently was,” says the court, “to commit the whole matter to the people, and provide that their edict in relation to it should be subjected to no intermediate obstructions,” etc. The reasoning in the case referred to is an argument in support of the view taken by the court below of the question involved in this case; for it is evident that if such discretion had been given the County Court of Davidson as is vested in the County Court of Warren, the result of that litigation would have been adverse to the company. It is true that in the case cited it is also said that “no power to levy a tax, appropriate money, or contract a debt is conferred by the act,” and the same conclusion might be reached from the literal language of the act before us; but nevertheless it is a preliminary step toward creating an indebtedness by the county of half a million of dollars, and upon the exercise of this discretion given the county court depends its right to enforce its collection by taxation. The right to impose a tax for county expenditures *723 or to create liabilities on the county for the payment of which a tax becomes necessary is peculiar to the county court composed of the county judge and justices.
Article 19 of chapter 27, Revised Statutes’, gave to the county court the power “to erect, superintend, and repair all needful public county buildings and structures.” Under this article the county judge of Harrison made an order for building a jailer’s house on the public square, and after its completion the county court, composed of the justices, refused to levy the cost of the building on the county. This court held that the county judge sitting as the county court had no power to lay a charge upon the county for the erection of the building, and that neither the county of Harrison nor the county court acting for and representing the county in its fiscal affairs was bound by the order of the county judge. (Harrison County Court v. Smith’s adm’r, 15 B. Mon. 156.) The conclusion is inevitable that such discretionary power as is here claimed over the financial interests of a people was never intended by the provisions of appellant’s charter to be vested in one man—that is, either in the county judge or, in his absence, the justice of the peace residing nearest the court-house. In construing this act as vesting the right in the tribunal organized with the power to control the expenditures and finances of the county, it is in harmony with the general law in regard to the jurisdiction of the county court, and expresses the true meaning and intention of the legislature when conferring the power. If the construction as to the meaning of appellant’s charter is involved in doubt, still that construction should be given it, in a case like this, most favorable to the county or people.
The. constitutional principle involved as to the right of the legislature to exercise the powers conferred by the act or delegate it to others has been definitely settled; but the authorities in recognizing this right all require a strict compliance with *724 the law from which the power is derived. In a case like this the voice of the minority, where the law has been complied with by the corporation, however onerous and oppressive the taxation placed upon them by the majority may be, will not be heard as to the policy of the act under which they are compelled by a vote of the majority to contribute by submitting to taxation for the payment of the county subscription. “ The power to tax is a high governmental power, and where the legislature grants this power to another tribunal it can only be exercised in strict conformity to the terms in which the power is granted, and a departure in any material part will be fatal to the attempt to exercise it.” (Campbell County Court v. Taylor, 8 Bush.)
In Dillon on Municipal Corporations (page 104, note) it is said, “ If upon the whole there be a fair, reasonable, and substantial doubt whether the legislature intended to confer the authority in question, particularly if it relates to a matter extra-municipal or unusual in its nature, and the exercise of which will be attended with assessments, taxes, tolls, or burdens upon the inhabitants, or oppress them, or abridge their natural or common rights, the doubt should be resolved in favor of the citizen and against the municipality.” This rule of construction should be applied in this case, and particularly when the rights and privileges vested in appellant by its charter are to be determined by reference to the charter of another and distinct corporation containing fifty-two sections, some of which, as this litigation develops, áre of doubtful import.
The original act incorporating appellant contains but four sections, in which the style of the corporation, the corporators, and the capital stock may be ascertained; and its rights and privileges are to be found only in the provisions of an act approved 'March 21, 1870, entitled “An act to incorporate the Cincinnati, Glasgow & Bowling Green Railroad Company.” *725 Although this mode of conferring corporate rights has been sanctioned by high authority, still when such legislation necessarily affects the rights of others, as in this case, the construction where the language of the act is of doubtful meaning must be favorable to those against whom the corporation under its charter is asserting its claim.
After a careful examination of the various sections of appellant’s charter we are satisfied that the court below was right in refusing the mandamus, and that the county judge had no authority to submit the question of taxation or subscription to a vote of the people without having associated with him a majority of the justices of the county.
The judgment is therefore affirmed.