LOGAN COUNTY *v.* R. H. CALDWELL.

[Kentucky Law Reporter, Vol. 1—376.]

**County Bonds to Aid Railroad Company.**

Under the provisions of the Act of 1867, p. 371, and the amendment thereof of Acts 1868, p. 515, providing for the issuing of county bonds to pay a subscription to a railroad company, it is held that an election held to vote on the proposition is legal when ordered by the presiding judge of the county court without the other members of the court being called upon, and also that, under the provisions of the amendatory act which came into force two days before such an election was held, a bare majority of all the votes cast is sufficient to authorize the county officials to subscribe for stock in such railroad company and to issue the county's bonds in payment of the subscription.

APPEAL FROM LOGAN CIRCUIT COURT.

October 28, 1880.

OPINION BY JUDGE COFER:.

Section 19 of the charter of the Owensboro and Russellville R. Co. (Acts 1867, p. 75) reads as follows:

"That the county courts of Daviess, Ohio, McLean, Muhlenburg and Logan counties shall have power, and are hereby authorized to subscribe to the capital stock of said company in such number of shares as may be determined by said county courts respectively, and to levy upon the taxpayers of such counties respectively such taxes as may be necessary to pay the stock by them respectively so sub-

scribed; and said county courts may, if they shall deem it prudent, issue the bonds of said counties respectively, for the amount of stock subscribed, or any part thereof, said bonds to be in such shares and payable at such times as said county courts may determine upon. But before such stock shall be subscribed by said county courts, the said county courts shall submit to the voters of said counties the proposition to subscribe stock, and the amount thereof (to be suggested and fixed by the commissioners named herein in each of said counties), at an election to be held on the third Monday in April, 1867, in each of the counties aforesaid, due notice of which shall be given by the sheriffs of each of said counties by written advertisements, posted in each of the voting precincts thereof, for at least thirty days before said day of election; and said stock shall not be subscribed unless a majority of all the votes cast at said election be in favor of such proposition; and said county courts have power to appoint suitable and necessary officers to conduct such election, and to provide for the collection of the tax aforesaid, if a majority of the votes cast at such election is in favor of the proposition aforesaid."

By an act supplemental to the charter, approved March 8, 1867, (2 Acts 1867, p. 371) it was provided "That the provisions of an act to incorporate the Owensboro and Russellville Railroad Company be so extended that in the event that any county, mentioned in said charter, shall, from any cause, fail to vote on the proposition to subscribe stock by the county court on the day mentioned in said charter, then it shall be lawful for such county at any time thereafter to vote on such proposition: Provided, That the county court of such county shall comply with the provisions of said charter in causing thirty (30) days' notice to be given, and with the other provisions of said section of the charter."

Sections 3 and 9 of an act to amend the charter of the company approved February 5, 1868 (1 Acts 1867-8, pp. 435-6), reads as follows: "Sec. 3. That it shall be lawful for the county judge to subscribe stock in said company on the petition of a majority of the voters of said county being to the said county judge presented in the same manner as though a vote had been taken under the act to which this is an amendment; and it shall be lawful for the county judge of any county that may have voted a tax under the original act to subscribe such additional stock as a majority of the voters of said county may petition for, and bonds shall be issued for all sums so petitioned for.   *   *·   *   Sec. 9. That whenever a majority of quali-

fied voters of any county, or precinct of any county, shall, either by vote or petition, instruct the county judge of the county or precinct so voting or petitioning to take stock in the Owensboro & Russellville Railroad Company, it shall be the duty of the county judge of said county to subscribe the amount so voted or petitioned for and issue bonds therefor."

At its December term, 1868, the county court of Logan county, the county judge alone being present and holding the court, ordered an election to be held at the several voting places in said county on the 27th of February, 1869, at which election there should be submitted to the voters this question: "Are you for or against a subscription by the Logan County Court of twenty thousand shares of twenty-five dollars each, to the capital stock of the Owensboro & Russellville Railroad Company, payable in the bonds of said county, having thirty years to run, and bearing interest at the rate of six per cent. per annum, and said amount to be expended in the construction of said railroad through the county of Logan?"

A vote was taken as ordered, and "the poll-books were duly certified and returned and were duly compared, the correctness of the summing up of the votes duly ascertained, and the result duly certified by John W. Caldwell, then judge of said county court, J. W. Winlock, then clerk of said court, and Sam Felts, then sheriff of said county, who made and returned their written certificate, signed by each of them, that at said election 1,306 votes were cast for said proposition, and 633 votes were cast against it, and that of all the votes cast there was a majority of 673 for said proposition."

By an order entered on the order book of the court at its March term, 1869, the county judge presiding, a subscription was made in conformity with the vote. Bonds signed by the county judge, attested by the clerk under the seal of the county and having interest coupons, signed by the clerk alone, attached, were subsequently issued and delivered to the railroad company in payment of the subscription.

The county court having failed to pay or provide for the payment of the coupons, maturing January 1, 1880, the appellee, being the owner and holder of seven of said coupons, brought this action against the county to recover judgment thereon. The county, without denying any of the foregoing facts, defended on two grounds, viz.: (1) that under the charter the county court, held by the county judge alone, had no power to order an election; (2) that the charter,

as it stood when the vote was ordered, only authorized a subscription to be made in the event that a majority of the legal voters of the county should vote in favor of such subscription, and that the votes cast in the affirmative were not a majority of the legal voters of the county at that time.

Counsel for the appellant maintained that under the charter, as it stood at the time the vote taken February 27, 1869, was ordered, no subscription was authorized upon a vote of the people unless a majority of the legal voters of the county should vote for it, and that it was a matter of discretion with the county court whether it would order a vote to be taken, and the case falls within the rule laid down in *Bowling Green & M. R. Co. v. Warren County Court*, 10 Bush 711. The county judge alone had no authority to order the election, and there was, therefore, no legal vote taken, and no authority was ever acquired by the county court to make the subscription which was made, or to issue the bonds now in suit in this case.

On the other hand counsel for the appellee contended that, as there were two methods provided in the charter by which the will of the voters in respect to the proposed subscription could be ascertained, one of which was wholly independent of the county court and was as effectual as a vote ordered by the court, and as the assent of a majority of the voters of the county was required whether the one or the other mode was adopted, the rule applied in the Bowling Green and Madisonville company's case does not apply.

The company's charter provided that whenever the said railroad company should request a county court "to subscribe either absolutely or upon specified condition, a specified amount to the capital stock of said company, the county court so requested may, in their discretion, order an election," etc.; and in the case against Warren county we held that the county judge sitting alone as the county court had no power to order a vote to be taken on the question whether a subscription should be made.

That case proceeded on the idea that, as the justices of the peace are, by law, part of the county court in levying the county levy, in making appropriations of money, and generally when the financial interests of the county are involved, it ought to be presumed, when a discretion is given by law to the county court in respect to a matter relating to the financial affairs of the county, that the legislature intended by the phrase "county court" that court to which it had by law committed the management of the general financial interests of

the county. It was said the question was one of importance to the people, on which they had a right to the judgment of those representing the various localities and interests of the county. That the legislature had in that instance departed from the usual course of legislation with reference to railroad charters was remarked upon, and, although the court did not say so in express words, a careful perusal of the opinion will show that the court regarded the fact that the matter of ordering a vote was submitted to the discretion of the county court as evincing the purpose of the legislature to place the parties, as it were, between the people and the railroad company, and for the protection of the people to require the assent of the justices as a condition upon which the people might be asked to incur a heavy pecuniary liability.

The charter under discussion in that case provided no mode of access to the people except through the county court, and the people had no power to impose upon themselves the proposed debit until the assent of the court was obtained, and hence the exercise of the discretion given to the court was an indispensable prerequisite, a condition precedent to any action by the people looking to a subscription to the stock of the company. That provision showed the legislature meant to require under any and all circumstances a concurrence of the judgment of the county court, and a majority of the voters voting at the election in any subscription that might be made, and that none should be made without such concurrence; and hence it was held that the legislature intended by the words "county court" a court composed of the presiding judge and justices—the representatives of the people of the various sections of the county—in all matters pertaining to county finances.

But we also said that if the discretion of the legislature had been imperative on the county court to order a submission of the question to a vote of the people, it would have been immaterial whether a court composed of the justices, or held by the presiding judge alone, made the order, as either or both must obey. We repeat, then, that the point on which that case turned was the clearly manifested intention of the legislature that no submission should be made under that charter without the assent of the county court and a majority of the voters voting on the question, and the assent of the court was required to be given before the voters could act at all in the matter.

Under the charter of the Owensboro and Russellville R. Co., as originally adopted, a like discretion was given to the county court,

and if there had been no amendment to it we might hold, as we did in the case of the Bowling Green and Madisonville company, although there are some grounds upon which the cases may be distinguished. But by the provisions of Section 3 of the Act of February 5, 1868, quoted supra, the legislature authorized the county courts to subscribe upon the petition of a majority of the legal voters of their respective counties, and, by Sec. 9 of the act, made it the imperative duty of the court to subscribe as directed by the petition, and in case of a vote it was made likewise imperative if a majority of the voters of the county voted in the affirmative. This shows that it was not the intention of the legislature to require the assent of both the county court and the people as an indispensable prerequisite to any subscription by a county. It would seem idle to suppose that the legislature meant to interpose the county court as a barrier to a subscription being authorized by vote without the previous consent of the court in order to secure to the people the benefit of the opinion and judgment of the court, when the legislature, at the same time and in the same act, placed it in their power to direct and compel the court to make the subscription, whether it approved the project or not. If the people desired to have the subscription made, and the court, on being applied to, refused to submit the question of subscribing to a vote, they might, by petition, accomplish their wish, despite the adverse views of the court. What reason could have induced the legislature, when authorizing a majority of the voters by petition to compel the court to make the subscription petitioned for, to require the assent of the court as a condition precedent to allowing a like number of voters by voting at the polls to require the subscription to be made? In the charter of the Bowling Green and Madisonville company the order of the court submitting to the people the question of subscribing was the only mode in which a subscription could be made, and was a condition, without which no subscription was authorized, however much the voters should desire to subscribe.

Under the charter of the Owensboro and Russellville company, the order submitting to a popular vote was one of two modes provided for ascertaining the will of the people. The fact that a mode was provided which was wholly independent of the county court, and much more liable to abuse and frauds, shows that the order of submission was intended merely as a means of ascertaining the popular will, and not as a condition precedent to a subscription; that the consent of the voters was the essential thing to be had; and that no

importance was attached to the opinion or judgment of the county court as to the propriety of subscribing for stock. As in the practical operations of the charter, the legislature seems to have attached no importance to the opinion of the county court as to the propriety of a county subscription, we cannot hold that the assent of the county court was a condition precedent to a vote and subscription. As we said in the case against Warren county, if the legislature had given the county court no discretion whether it would order an election, it would have been immaterial whether the court that ordered the election was held by the county judge alone, or was composed of the judge and justices; so we hold here that as the legislature has plainly manifested its intention not to make the right of the people to require a subscription to depend upon the discretion of the court, and to confer upon the people alone the power that was conferred under the Bowling Green and Madisonville charter upon the people and the county court jointly, it was immaterial whether the vote that was to ascertain the will of the people was made by the county court, held by the county judge alone, or by the judge and justices, as in either case it was the consent of the voters and the county court that the legislature intended should decide the question.

We recognize the rule that a statute conferring such powers must be strictly construed in all matters affecting the substantial rights of the taxpayers. But at most the county court, by which the vote was ordered, was not properly constituted, but it was still the county court.

The object in submitting the question through the county court was merely to ascertain, in a regular and orderly manner, the voice of the voters, which was made the controlling power, and whether the tribunal that ordered the vote was constituted precisely as intended or not, it was, at most, but an irregularity which in no manner reached or affected the voters or the result of the vote or the substance of the transaction. We are, therefore, of the opinion that the order of the county court, submitting the question of subscribing to the stock of the company to a vote of the people, was and is a valid order.

As we have heretofore stated, when the order for a vote was made the charter only authorized a subscription to be made in the event that a majority of the voters of the county should vote in favor of it. But two days before the vote was to be taken an act further to amend the charter became a law. That act amended section 6 of the

Act of February 5, 1868, quoted at the beginning of this opinion, so as to read as follows:

"That whenever a majority of the votes cast at any election held for that purpose shall instruct the county judge of the county or precinct voting, to take stock in the Owensboro & Russellville Railroad, it shall be the duty of the county judge of the county to subscribe the amount so voted for, and to issue bonds therefor: Provided, however, That this act shall not interfere with subscriptions by petition, as authorized in the act to which this is an amendment and the original act of incorporation." (1 Acts 1868-9, p. 515.)

As a majority of the voters of the county did not vote in favor of the subscription, that vote did not authorize the subscription that was made, or the issuing of the bonds of the county to pay for it, unless the foregoing act is applicable. The vote was taken after the act went into effect, and, therefore comes within the terms of the act.

It is contended, however, that the legislature only intended it to apply to votes taken at elections ordered after it went into effect, and to apply it to a vote ordered before its passage and taken two days after its passage would make it operate as a fraud upon the voters; that the voters knew when the vote was ordered that the law provided that unless a majority of the voters of the county voted in favor of the proposed subscription it could not be made; that they knew that if they abstained from voting they would be counted as voting against it; and that the act of February, 1869, being passed only two days before the vote, the voters could not learn its provisions in time to enable them to vote against the subscription if they desired to do so.

But the language of the statute is plain and unambiguous. There is no room for construction. The act was in force when the election was held; it was held for the purpose of instructing the county court to subscribe for stock in the Owensboro & Russellville R. Co., and a majority of the votes cast were in favor of the subscription. The act declared that in that event it should be the duty of the county judge to make the subscription; and he acted in obedience to it and made the subscription and issued the bonds. The power of the legislature to pass the act has not been, and, in our opinion, cannot be successfully questioned. The legislature passed it, and, in language which does not admit of construction, applied it to the election held two days after its passage, and the courts have no power to annul or disregard it.

We are, therefore, of the opinion that the subscription bonds are valid, and the judgment of the court below to that effect is *affirmed*.

Judge Hargis dissenting.

*Golladay & Lyle, C. M. Harwood, for appellant.*

*Browder, Browder & Caldwell, for appellee.*

[Cited, *Feland v. Morton*, 10 Ky. L. 217, 8 S. W. 852.]